1  TIMOTHY E. HODGSON
   ATTORNEY AT LAW
   CSB # 108398
2  P.O. BOX 517
   11860 WASHINGTON AVENUE
3  COURTLAND, CALIFORNIA 95615
   TEL: (916) 599-1844
   EMAIL: email@timhodgson.us
4

5  TIMOTHY E. HODGSON, in Pro Se

6

7

8     UNITED STATES DISTRICT COURT FOR EASTERN DISTRICT OF CALIFORNIA

9                          SACRAMENTO DIVISION

10 TIMOTHY E. HODGSON,            )   No.
                                  )
11         Plaintiff,             )   **VERIFIED      COMPLAINT     FOR**
                                  )   **DECLARATORY,    INJUNCTIVE   AND**
12    vs.                         )   **EQUITABLE RELIEF**
                                  )
13 UNITED STATES DEPARTMENT OF    )
   AGRICULTURE; UNITED STATES     )
14 DEPARTMENT OF AGRICULTURE      )
   FOREST SERVICE; JOE STOUT      )
15 in his capacity as Forest      )
   Supervisor, Eldorado National  )
16 Forest,                        )
                                  )
17         Defendants.            )
   _____/
18

19 Plaintiff alleges:

20     1.   Plaintiff TIMOTHY E. HODGSON is, and at all times mentioned

21 in this complaint was, an individual residing in Sacramento County,

22 California.

23     2.   Defendant  UNITED  STATES  DEPARTMENT  OF  AGRICULTURE

24 ("DEPARTMENT OF AGRICULTURE") is an agency of the United States of

25 America.

26     3.   Defendant UNITED STATES DEPARTMENT OF AGRICULTURE FOREST

27 SERVICE ("FOREST SERVICE") is a service within defendant DEPARTMENT

28 OF AGRICULTURE.

TIMOTHY E. HODGSON
ATTORNEY AT LAW

*TIMOTHY E. HODGSON vs.*                                    VERIFIED COMPLAINT
*UNITED STATES DEPARTMENT OF AGRICULTURE, et al.* -1-    FOR DECLARATORY RELIEF, ETC.

1    4.   Defendant JOE STOUT is an individual who is sued in his

2   capacity as Forest Supervisor of the Eldorado National Forest which

3   issued the recreation residence permit which is the subject of this

4   action.

5

6                              JURISDICTION

7    5.   The jurisdiction of this Court over the subject matter of

8   this action is provided by the Administrative Procedure Act pursuant

9   to 5 USC §§  701, et seq., for actions seeking relief other than money

10  damages and stating a claim against an agency or one if its officers

11  or employees whom acted or failed to act in an official capacity or

12  under color of legal authority under 5 USC § 702 of the Administrative

13  Procedure Act.

14

15                           SOVEREIGN IMMUNITY

16   6.   Sovereign immunity is waived or excepted for this civil

17  action which seeks relief other than money damages and states a claim

18  against an agency or its officers or employees whom are alleged to

19  have acted or failed to act in an official capacity or under color of

20  legal authority under 5 USC § 702 of the Administrative Procedure Act

21  and under 28 USC § 1361 for mandamus to compel a federal officer to

22  perform his or her official duties.

23

24                               VENUE

25   7.   The venue of this action is predicated on 28 USC § 1391.

26  All defendants reside in this district or the claim arose in this

27  district.

28

TIMOTHY E. HODGSON
ATTORNEY AT LAW

*TIMOTHY E. HODGSON vs.*
*UNITED STATES DEPARTMENT OF AGRICULTURE, et al.*  -2-

VERIFIED COMPLAINT
FOR DECLARATORY RELIEF, ETC.

1          <u>FACTS COMMON TO ALL CAUSES OF ACTION</u>

2     8.   In or about the year 1929, defendant DEPARTMENT OF

3 AGRICULTURE, acting by and through defendant FOREST SERVICE, issued

4 plaintiff's predecessor in interest a <u>Term Special Use Permit for

5 Recreation Residences</u>.

6     9.   In reliance thereon, plaintiff's predecessors in interest

7 constructed a recreation residence on Lot 116 of the 47 Milestone

8 Tract in the Eldorado National Forest.

9     10.  A photo of the residence as it existed in 2017 is attached

10 hereto as Exhibit 1.

11    11.  On or about August 15, 2005, defendant DEPARTMENT OF

12 AGRICULTURE again acting by and through defendant FOREST SERVICE

13 issued a renewed <u>Term Special Use Permit for Recreation Residences</u>

14 (the "Permit") for the recreation residence on Lot 116 of the 47

15 Milestone Tract to plaintiff Timothy E. Hodgson ("holder" in the

16 Permit and "plaintiff/holder" herein).

17    12.  A true and correct copy of the Permit is attached hereto as

18 Exhibit 2.

19    13.  By its terms, the Permit authorized plaintiff/holder to use

20 National Forest Lands to use and maintain a recreation residence for

21 personal use in the Eldorado National Forest, subject to the

22 provisions of the Permit including items I.A through XI.D, on pages

23 2 through 8.  The permit covers .43 acres and is described as:

24          "Lot 116 of the 47 MILESTONE tract

25     (On a plat of which is on file in the office of the Forest

26     Supervisor.)

27     OR (2) PORTION OF Sec. 10, T. 11 N. R. 17 E. MT. DIABLO

28     PRINCIPAL"

TIMOTHY E. HODGSON
ATTORNEY AT LAW

*TIMOTHY E. HODGSON vs.*
*UNITED STATES DEPARTMENT OF AGRICULTURE, et al.* -3-

VERIFIED COMPLAINT
FOR DECLARATORY RELIEF, ETC.

(Exhibit 2.)

14.   By its terms, the Permit authorized the following improvements, whether on or off the lot:

"LOT 116 47 MILESTONE

CABIN APPROXIMATELY 925 SQ.FT, EXCLUDING LOFT PROPANE TANK,

APPROXIMATELY 250 GALLONS OFF-SITE WATER SYSTEM, SPRING

FED"

(Exhibit 2.)

15.   By its terms, the Permit also accepted the following improvements in addition to the residence structure:

"DECK/PATIO AREAS, APPROXIMATELY 1105 SQ.FT

GARAGE, APPROXIMATELY 400 SQ.FT."

(Exhibit 2.)

16.   Pursuant to the Permit, defendant DEPARTMENT OF AGRICULTURE and defendant FOREST SERVICE promised the forgoing in return for plaintiff/holder's payment of annual fees.

17.   Plaintiff/holder in all other ways timely and completely performed plaintiff/holder's obligations under the terms of the Permit.

18.   Plaintiff/holder's parents purchased the recreation residence in 1967 and in the years since, the recreation residence provided great pleasure to plaintiff/holder and later his family by facilitating recreational access to hiking, fishing, deer hunting, snow skiing, and the venue for plaintiff/holder's wedding. (Exhibit 3.)

19.   At all times plaintiff/holder was a great steward of the surrounding forest land including removing trash and other debris along U.S. Highway 50 and the Aspen Creek highway turnout opposite the

TIMOTHY E. HODGSON
ATTORNEY AT LAW

*TIMOTHY E. HODGSON vs.*
*UNITED STATES DEPARTMENT OF AGRICULTURE, et al.* -4-

VERIFIED COMPLAINT
FOR DECLARATORY RELIEF, ETC.

residence.

20. Plaintiff/holder has at all times maintained the residence and its appurtenances in good and safe condition including but not limited to:

    a) Removing the recreation residence's existing then-75-year-old roof and replacing the same with Class A Fire Retardant treated cedar shingles;

    b) Removing, furring from 2"x4" to 2"x6" width, and insulating and rewiring the residence's exterior walls;

    c) Painting the residence's exterior numerous times;

    d) Repairing the residence's deck and replacing the deck boards including stairs and railings;

    e) Repairing or replacing the residence's foundation;

and more.

21. At all times, plaintiff/holder has complied with and has fully performed plaintiff/holder's obligations under the Permit including but not limited to timely paying all annual permit fees and County of El Dorado property taxes imposed on the real estate.

22. On or about August 29, 2021, plaintiff/holder's recreation residence was consumed and completely destroyed by the Caldor fire. (Exhibit 4.)

23. Under paragraph VI.F. of the Permit, plaintiff/holder is and was entitled to rebuild the recreation residence unless defendant FOREST SERVICE determined that the rebuilt residence cannot "be safely occupied in the future":

"F. The holder assumes all risk of loss to the improvements resulting from acts of God or catastrophic events, including but not limited to, avalanches, rising waters, high winds, falling limbs or trees and other hazardous natural events. In the event the improvements authorized by

1   this permit are destroyed or substantially damaged by acts
2   of God or catastrophic events, the authorized officer will
    conduct an analysis to determine whether the <u>improvements</u>
    <u>can be safely occupied in the future</u> and whether rebuilding
3   should be allowed. <u>The analysis will be provided to the</u>
    <u>holder within 6 months of the event</u>."
4

5   (Exhibit 2, IV. RESPONSIBILITIES OF HOLDER, ¶ F.)

6       24.  Pursuant to paragraph F, defendant FOREST SERVICE was

7   obligated to provide its safety analysis to plaintiff/holder "within

8   6 months of the event."

9       25.  Accordingly, defendant FOREST SERVICE safety analysis was

10  due no later than February 28, 2022.

11      26.  On or about July 6, 2023 -- *almost a year and a half after*

12  *defendant FOREST SERVICE was obligated to provide its safety analysis*

13  *--* defendant   FOREST   SERVICE   issued   its   letter   denying

14  plaintiff/holder's right to rebuild ("Denial Letter") stating the

15  following reasons:

16      "Regretfully, your lot is not suitable for rebuilding a
        Recreation Residence. Please see the excerpt from the
17      Geologic and Flood Hazard Assessment below which informed
        this decision.
18
        Comments:  Two building sites located in wetland area
19      between two perennial channels. Site is flooded from
        groundwater.  See 116b.  Located between two perennial
20      channels (60' & 100').

21      Recommendations:  Do not rebuild because of alluvial fan
        flood hazard.
22
        Additionally, cabin site is flooded and within wetland.
23
        Suitability: Not suitable for a cabin site because in
24      alluvial fan flood area."

25  (Exhibit 5.)

26      27.  In the 1 year, 4 months, 8 days between the date of

27  destruction and the date defendant FOREST SERVICE's delivered its

28  tardy safety analysis, plaintiff/holder incurred significant expenses

TIMOTHY E. HODGSON
ATTORNEY AT LAW

*TIMOTHY E. HODGSON vs.*                                          VERIFIED COMPLAINT
*UNITED STATES DEPARTMENT OF AGRICULTURE, et al.*  -6-        FOR DECLARATORY RELIEF, ETC.

1  related to the property including but not limited to paying El Dorado

2  County Property Taxes and property insurance (which, if not kept

3  current, would have been non-renewed).

4

5                           **COUNT I.**

6           **(DECLARATORY, INJUNCTIVE AND EQUITABLE RELIEF)**

7       28.  Plaintiff/holder incorporates herein each and every other

8  paragraph of this complaint.

9       29.  As alleged above, under the terms of the Permit,

10 plaintiff/holder has the right to rebuild plaintiff/holder's

11 recreation residence.

12      30.  This Court may declare the rights and other legal relations

13 of plaintiff/holder vis a vis defendants DEPARTMENT OF AGRICULTURE and

14 FOREST SERVICE with regard to plaintiff/holder's recreation residence

15 Permit:

16          "[A]ny Court of the United States, upon the filing of an
            appropriate pleading, may declare the rights and other
17          legal relations of any interested party seeking such
            declaration, whether further relief is or could be sought.
18          Any such declaration shall have the force and effect of a
            final judgment or decree and shall be reviewable as such."
19

20 [28 U.S.C. § 2201.]

21      31.  Plaintiff/holder has no adequate and speedy remedy to

22 resolve the parties' dispute other than by a declaratory judgment from

23 this Court. Because of the urgency and importance of the issues

24 presented by the parties' dispute, it is necessary and appropriate for

25 the Court to resolve this dispute by issuing a judicial declaration

26 determining the respective rights and obligations of the parties.

27      32.  An actual controversy has arisen and now exists between

28 plaintiff/holder and defendants DEPARTMENT OF AGRICULTURE and FOREST

TIMOTHY E. HODGSON
ATTORNEY AT LAW

*TIMOTHY E. HODGSON vs.*
*UNITED STATES DEPARTMENT OF AGRICULTURE, et al.* -7-          VERIFIED COMPLAINT
                                                    FOR DECLARATORY RELIEF, ETC.

1  SERVICE concerning their respective rights and duties under the
2  Permit.

3      33.  Specifically, plaintiff/holder contends and defendant FOREST
4  SERVICE disputes and, accordingly, plaintiff/holder requests the Court
5  declare the following rights and other legal relations of any
6  interested party seeking such declaration, whether further relief is
7  or could be sought including but not limited to the following specific
8  facts which, as a result, compel this Court mandate that defendants
9  DEPARTMENT OF AGRICULTURE and FOREST SERVICE withdraw their denial of
10 plaintiff/holder's request to rebuild:

11      a.  Defendant FOREST SERVICE's analysis actually fatally
12 failed to find that the recreation residence *cannot* be "safely
13 occupied in the future" and, thus, defendant FOREST SERVICE's denial
14 of plaintiff/holder's right to rebuild failed to comply with the terms
15 of the Permit and is not supported by substantial evidence;

16      b.  Defendant FOREST SERVICE's denial of plaintiff/holder's
17 right to rebuild utterly failed to consider readily available hazard
18 mitigation construction techniques commonly adapted to building in
19 wetlands and flood plains and, thus, defendant FOREST SERVICE's denial
20 of plaintiff/holder's right to rebuild failed to comply with the terms
21 of the Permit and is not supported by substantial evidence;

22      c.  The specific part of the recreation residence site
23 where plaintiff/holder plans and proposes to rebuild is on a hump
24 above and midway between and approximately 60'-100' from each of the
25 annual streams (although defendant FOREST SERVICE has characterized
26 the streams as "perennial channels," they are in fact annual snow-fed
27 streams which completely dry up once the snow is melted – this is
28 documented by photos and Summer per gallon flow analysis) and, thus,

1    defendant FOREST SERVICE's finding that the recreation residence

2    cannot not be safely rebuilt on the Permit site at a particular spot

3    not in areas of alleged wetlands or flood plains is not supported by

4    substantial evidence and, thus, fails to comply with the terms of the

5    permit;

6              d.   Defendant FOREST SERVICE is not statutorily authorized

7    to declare a flood plain and, thus, defendant FOREST SERVICE's denial

8    of plaintiff/holder's right to rebuild exceeded defendant FOREST

9    SERVICE's authority and also failed to comply with the terms of the

10   Permit;

11             e.   Only the Federal Emergency Management Agency (FEMA) can

12   declare a flood plain;

13             f.   FEMA has not declared any part of the recreation

14   residence site to be a flood plain (in fact, the slope angle is not

15   a "plain" at all nor is it "alluvial" but, rather, the recreation

16   residence site is located on a 15 to 25 degree slope at the toe of a

17   mountain which, in fact, is rather dry once the two to four feet of

18   annual snow accumulation has melted which is common for properties at

19   the site's 6,800 foot elevation) and, thus, defendant FOREST SERVICE's

20   denial of plaintiff/holder's right to rebuild exceeded defendant

21   FOREST SERVICE's authority and also failed to comply with the terms

22   of the Permit;

23             g.   Only the U.S. Fish and Wildlife Service can declare a

24   wetland;

25             h.   The U.S. Fish and Wildlife Service has not declared any

26   part of the recreation residence site a wetland and, thus, defendant

27   FOREST SERVICE's denial of plaintiff/holder's right to rebuild

28   exceeded defendant FOREST SERVICE's authority and also failed to

TIMOTHY E. HODGSON
ATTORNEY AT LAW

*TIMOTHY E. HODGSON vs.*
*UNITED STATES DEPARTMENT OF AGRICULTURE, et al.*  -9-

VERIFIED COMPLAINT
FOR DECLARATORY RELIEF, ETC.

1  comply with the terms of the Permit;  and

2          i.   Defendant FOREST SERVICE breached the terms of the

3  Permit by failing to provide its analysis within six months of the

4  recreation residences' destruction and, therefore, defendant FOREST

5  SERVICE is prohibited from denying plaintiff/holder's right to rebuild

6  under the Permit.

7      34.  Additionally, this Court may provide plaintiff/holder

8  further necessary or proper relief against defendants in favor of

9  plaintiff/holder in the event that plaintiff/holder's rights have been

10 upheld by Court declaratory judgment or decree:

11         "Further necessary or proper relief based on a declaratory
           judgment or decree may be granted, after reasonable notice
12         and hearing, against any adverse party whose rights have
           been determined by such judgment."
13

14 [28 U.S.C. § 2202.]

15     35.  Accordingly, this Court should mandate defendants DEPARTMENT

16 OF AGRICULTURE, FOREST SERVICE and JOE STOUT to withdraw their denial

17 of plaintiff/holder's right to rebuild.

18     36.  Additionally, this Court should mandate defendants

19 DEPARTMENT OF AGRICULTURE, FOREST SERVICE and JOE STOUT to renew

20 plaintiff/holder's Permit for another 20-year term.

21     37.  And, with respect to this lawsuit, this Court should

22 equitably toll the expiration of plaintiff/holder's current Permit for

23 such time as it takes for the Court to render its judgment or decree

24 in this matter, or, at the very least, equitably extend the term of

25 plaintiff/holder's current Permit for 1 year, 4 months, 8 days to

26 equal the tardy delivery of defendant FOREST SERVICE's analysis.

27 ///

28 ///

TIMOTHY E. HODGSON
ATTORNEY AT LAW

*TIMOTHY E. HODGSON vs.*
*UNITED STATES DEPARTMENT OF AGRICULTURE, et al.* -10-                VERIFIED COMPLAINT
                                                                      FOR DECLARATORY RELIEF, ETC.

<u>PRAYER</u>

WHEREFORE, Plaintiff prays for judgment as follows:

1.  For a judicial determination of plaintiff's rights that:

a) this Court mandate defendants DEPARTMENT OF AGRICULTURE, FOREST SERVICE and JOE STOUT to withdraw their denial of plaintiff/holder's right to rebuild; and

b) this Court mandate defendants DEPARTMENT OF AGRICULTURE, FOREST SERVICE and JOE STOUT to renew plaintiff/holder's Permit for another 20-year term.

2.  For reasonable attorney fees under the Equal Access to Justice Act pursuant to 5 U.S.C. § 504;

3.  For costs of suit herein incurred; and

4.  For such further relief as the Court may deem proper.

Dated:  December 30, 2024

_____
Timothy E. Hodgson
Pro Se

<u>VERIFICATION</u>

I am the plaintiff in this action.  I have read the foregoing complaint and it is true of my own knowledge, except as to those matters stated on information or belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 30, 2024, at Courtland, California.

Dated:  December 30, 2024

Timothy E. Hodgson

TIMOTHY E. HODGSON
ATTORNEY AT LAW

*TIMOTHY E. HODGSON vs.*
*UNITED STATES DEPARTMENT OF AGRICULTURE, et al.* -11-

VERIFIED COMPLAINT
FOR DECLARATORY RELIEF, ETC.

**EXHIBIT  1**



**EXHIBIT  2**

FS-2700-5a (05/03)
OMB No. 0596-0082

Authorization ID: PVL7623
Contact ID: HODGSON, T
Expiration Date: 12/31/2024
Use Code: 123

**U.S. DEPARTMENT OF AGRICULTURE**
**Forest Service**
**TERM SPECIAL USE PERMIT**
**For Recreation Residences**
**AUTHORITY:**
**OCCUPANCY PERMITS, AS AMENDED  March 4, 1915**

Timothy E. Hodgson, 8037 La Riviera, Sacramento, CA  95826 (hereafter called the holder) is hereby authorized to use National Forest lands, for a recreation residence for personal recreational use on the Eldorado National Forest, subject to the provisions of this permit including items I.A through XI.D, on page(s) 2  through  8. This permit covers .43 acres.

Described as: (1) Lot 116 of the 47 MILESTONE tract.
(A plat of which is on file in the office of the Forest Supervisor.)
OR

(2) PORTION OF Sec. 10, T. 11 N., R. 17 E., MT. DIABLO PRINCIPAL

The following improvements, whether on or off the lot, are authorized in addition to the residence structure:

LOT 116  47 MILESTONE

CABIN APPROXIMATELY 925 SQ.FT,  EXCLUDING LOFT
PROPANE TANK, APPROXIMATELY 250 GALLONS
OFF-SITE WATER SYSTEM, SPRING FED

THE FOLLOWING IMPROVEMENTS ARE CONDITIONALLY ACCEPTED AND MAY REQUIRE MODIFICATION OR REMOVAL IF DESTROYED, SUBSTANTIALLY DAMAGED, OR IF SUBSTANTIAL REPAIRS ARE NEEDED:

DECK/PATIO AREAS, APPROXIMATELY 1105 SQ.FT
GARAGE, APPROXIMATELY 400 SQ.FT.

This use shall be exercised at least 15 days each year, unless otherwise authorized in writing.  It shall not be used as a full-time residence to the exclusion of a home elsewhere.

**THIS PERMIT IS NOT TRANSFERABLE**
**PURCHASERS OF IMPROVEMENTS ON SITES AUTHORIZED BY THIS PERMIT MUST SECURE A NEW PERMIT FROM THE FOREST SERVICE.**

**THIS PERMIT IS ACCEPTED SUBJECT TO ALL OF ITS TERMS AND CONDITIONS.**

| ACCEPTED: | | TIMOTHY E. HODGSON | 8/3/05 |
|---|---|---|---|
| | HOLDER SIGNATURE | HOLDER NAME | DATE |
| APPROVED: | Cindy d Oszwald | Kathryn D. Hardy, District Ranger | 8/15/05 |
| | SIGNATURE AUTHORIZED OFFICER | NAME AND TITLE | DATE |

1

FS-2700-5a (05/03)
OMB No 0596-0082

## TERMS AND CONDITIONS

### I.  AUTHORITY AND USE AND TERM AUTHORIZED

A. This permit is issued under the authority of the Act of March 4, 1915, as amended (16 U.S.C. 497), and Title 36, Code of Federal Regulations, Sections 251.50-251.64. Implementing Forest Service policies are found in the Forest Service Directives System (FSM 1920, 1950, 2340, 2720; FSH 2709.11, Chap. 10-50). Copies of the applicable regulations and policies will be made available to the holder at no charge upon request made to the office of the Forest Supervisor.

B. The authorized officer under this permit is the Forest Supervisor, or a delegated subordinate officer.

C. This permit authorizes only personal recreation use of a noncommercial nature by the holder, members of the holder's immediate family, and guests. Use of the permitted improvements as a principal place of residence is prohibited and shall be grounds for revocation of this permit.

D. Unless specifically provided as an added provision to this permit, this authorization is for site occupancy and does not provide for the furnishing of structures, road maintenance, water, fire protection, or any other such service by a Government agency, utility association, or individual.

E. Termination at End of Term:  This authorization will terminate on 12/31/2024.

### II.  OPERATION AND MAINTENANCE

A. The authorized officer, after consulting with the holder, will prepare an operation and maintenance plan which shall be deemed a part of this permit. The plan will be reviewed annually and updated as deemed necessary by the authorized officer and will cover requirements for at least the following subjects:

1. Maintenance of vegetation, tree planting, and removal of dangerous trees and other unsafe conditions
2. Maintenance of the facilities.
3. Size, placement and descriptions of signs.
4. Removal of garbage or trash.
5. Fire protection.
6. Identification of the person responsible for implementing the provisions of the plan, if other than the holder, and a list of names, addresses, and phone numbers of persons to contact in the event of an emergency.

### III.  IMPROVEMENTS

A. Nothing in this permit shall be construed to imply permission to build or maintain any improvement not specifically named on the face of this permit or approved in writing by the authorized officer in the operation and maintenance plan. Improvements requiring specific approval shall include, but are not limited to:  signs, fences, name plates, mailboxes, newspaper boxes, boathouses, docks, pipelines, antennas, and storage sheds.

B. All plans for development, layout, construction, reconstruction or alteration of improvements on the lot, as well as revisions of such plans, must be prepared by a licensed engineer, architect, and/or landscape architect (in those states in which such licensing is required) or other qualified individual acceptable to the authorized officer. Such plans must be approved by the authorized officer before the commencement of any work.

### IV.  RESPONSIBILITIES OF HOLDER

A. The holder, in exercising the privileges granted by this permit, shall comply with all present and future regulations of the Secretary of Agriculture and all present and future federal, state, county, and municipal laws, ordinances, or regulations which are applicable to the area or operations covered by this permit. However, the Forest Service assumes no responsibility for enforcing laws, regulations, ordinances and the like, which are under the jurisdiction of other government bodies.

B. The holder shall exercise diligence in preventing damage to the land and property of the United States. The holder shall abide by all restrictions on fires, which may be in effect within the forest at any time and take all reasonable precautions to prevent and suppress forest fires. No material shall be disposed of by burning in open

2

FS-2700-5a (05/03)
OMB No 0596-0082

fires during a closed fire season established by law or regulation without written permission from the authorized officer.

C  The holder shall protect the scenic and esthetic values of the National Forest System lands as far as possible consistent with the authorized use, during construction, operation, and maintenance of the improvements.

D.  No soil, trees, or other vegetation may be removed from the National Forest System lands without prior permission from the authorized officer.  Permission shall be granted specifically, or in the context of the operations and maintenance plan for the permit.

E.  The holder shall maintain the improvements and premises to standards of repair, orderliness, neatness, sanitation, and safety acceptable to the authorized officer.  The holder shall fully repair and bear the expense for all damage, other than ordinary wear and tear, to National Forest lands, roads and trails caused by the holder's activities.

F.  The holder assumes all risk of loss to the improvements resulting from acts of God or catastrophic events, including but not limited to, avalanches, rising waters, high winds, falling limbs or trees and other hazardous natural events.  In the event the improvements authorized by this permit are destroyed or substantially damaged by acts of God or catastrophic events, the authorized officer will conduct an analysis to determine whether the improvements can be safely occupied in the future and whether rebuilding should be allowed.  The analysis will be provided to the holder within 6 months of the event.

G.  The holder has the responsibility of inspecting the site, authorized rights-of-way, and adjoining areas for dangerous trees, hanging limbs, and other evidence of hazardous conditions which could affect the improvements and or pose a risk of injury to individuals.  After securing permission from the authorized officer, the holder shall remove such hazards.

H.  In case of change of permanent address or change in ownership of the recreation residence, the holder shall immediately notify the authorized officer.

## V.  LIABILITIES

A.  This permit is subject to all valid existing rights and claims outstanding in third parties.  The United States is not liable to the holder for the exercise of any such right or claim.

B.  The holder shall hold harmless the United States from any liability from damage to life or property arising from the holder's occupancy or use of National Forest lands under this permit.

C.  The holder shall be liable for any damage suffered by the United States resulting from or related to use of this permit, including damages to National Forest resources and costs of fire suppression.  Without limiting available civil and criminal remedies which may be available to the United States, all timber cut, destroyed, or injured without authorization shall be paid for at stumpage rates which apply to the unauthorized cutting of timber in the state wherein the timber is located.

## VI.  FEES

A.  Fee Requirement:  This special use authorization shall require payment in advance of an annual rental fee.

B.  Appraisals:

1.  Appraisals to ascertain the fair market value of the lot will be conducted by the Forest Service at least every 20 years.  The next appraisal will be implemented in 2001.

2.  Appraisals will be conducted and reviewed in a manner consistent with the Uniform Standards of Professional Appraisal Practice, from which the appraisal standards have been developed, giving accurate and careful consideration to all market forces and factors, which tend to influence the value of the lot.

3.  If dissatisfied with an appraisal utilized by the Forest Service in ascertaining the permit fee, the holder may employ another qualified appraiser at the holder's expense.  The authorized officer will give full and complete

3

FS-2700-5a (05/03)
OMB No 0596-0082

consideration to both appraisals provided the holder's appraisal meets Forest Service standards. If the two appraisals disagree in value by more than 10 percent, the two appraisers will be asked to try and reconcile or reduce their differences. If the appraisers cannot agree, the Authorized Officer will utilize either or both appraisals to determine the fee. When requested by the holder, a third appraisal may be obtained with the cost shared equally by the holder and the Forest Service. This third appraisal must meet the same standards of the first and second appraisals and may or may not be accepted by the authorized officer.

C. Fee Determination:

1. The annual rental fee shall be determined by appraisal and other sound business management principles. (36 CFR 251.57(a)). The fee shall be 5 percent of the appraised fair market fee simple value of the lot for recreation residence use. Fees will be predicated on an appraisal of the lot as a base value, and that value will be adjusted in following years by utilizing the percent of change in the Implicit Price Deflator - Gross National Product (IPD-GNP) index as of the previous June 30. A fee from a prior year will be adjusted upward or downward, as the case may be, by the percentage change in the IPD-GNP, except that the maximum annual fee adjustment shall be 10 percent when the IPD-GNP index exceeds 10 percent in any one year with the amount in excess of 10 percent carried forward to the next succeeding year where the IPD-GNP index is less than 10 percent. The base rate from which the fee is adjusted will be changed with each new appraisal of the lot, at least every 20 years.

2. If the holder has received notification that a new permit will not be issued following expiration of this permit, the annual fee in the tenth year will be taken as the base, and the fee each year during the last 10-year period will be one-tenth of the base multiplied by the number of years then remaining on the permit If a new term permit should later be issued, the holder shall pay the United States the total amount of fees foregone, for the most recent 10-year period in which the holder has been advised that a new permit will not be issued. This amount may be paid in equal annual installments over a 10-year period in addition to those fees for existing permits. Such amounts owing will run with the property and will be charged to any subsequent purchaser of the improvements.

D. Initial Fee: The initial fee may be based on an approved Forest Service appraisal existing at the time of this permit, with the present day value calculated by applying the IPD-GNP index to the intervening years.

E. Payment Schedule: Based on the criteria stated herein, the initial payment is set at $803.23 per year and the fee is due and payable annually on January 1st. Payments will be credited on the date received by the designated collection officer or deposit location. If the due date(s) for any of the above payments or fee calculation statements fall on a non-workday, the charges shall not apply until the close of business of the next workday. Any payments not received within 30 days of the due date shall be delinquent.

F. Late Payment Interest, Administrative Costs and Penalties: Pursuant to 31 U.S.C. 3717, et seq., interest shall be charged on any fee amount not paid within 30 days from the date the fee or fee calculation financial statement specified in this authorization becomes due. The rate of interest assessed shall be the higher of the rate of the current value of funds to the U.S. Treasury (i.e., Treasury tax and loan account rate), as prescribed and published by the Secretary of the Treasury in the Federal Register and the Treasury Fiscal Requirements Manual Bulletins annually or quarterly or at the Prompt Payment Act rate. Interest on the principal shall accrue from the date the fee or fee calculation financial statement is due.

In the event the account becomes delinquent, administrative costs to cover processing and handling of the delinquency will be assessed.

A penalty of 6 percent per annum shall be assessed on the total amount delinquent in excess of 90 days and shall accrue from the same date on which interest charges begin to accrue.

Payments will be credited on the date received by the designated collection officer or deposit location. If the due date for the fee or fee calculation statement falls on a non-workday, the charges shall not apply until the close of business on the next workday.

Disputed fees are due and payable by the due date. No appeal of fees will be considered by the Forest Service without full payment of the disputed amount. Adjustments, if necessary, will be made in accordance with settlement terms or the appeal decision.

FS-2700-5a (05/03)
OMB No. 0596-0082

If the fees become delinquent, the Forest Service will:

Liquidate any security or collateral provided by the authorization.

If no security or collateral is provided, the authorization will terminate and the holder will be responsible for delinquent fees as well as any other costs of restoring the site to it's original condition including hazardous waste cleanup.

Upon termination or revocation of the authorization, delinquent fees and other charges associated with the authorization will be subject to all rights and remedies afforded the United States pursuant to 31 U.S.C. 3711 *et seq.* Delinquencies may be subject to any or all of the following conditions:

Administrative offset of payments due the holder from the Forest Service.

Delinquencies in excess of 60 days shall be referred to United States Department of Treasury for appropriate collection action as provided by 31 U.S.C. 3711 (g), (1).

The Secretary of the Treasury may offset an amount due the debtor for any delinquency as provided by 31 U.S.C. 3720, *et seq.*)

G. Nonpayment Constitutes Breach: Failure of the holder to make the annual payment, penalty, interest, or any other charges when due shall be grounds for termination of this authorization. However, no permit will be terminated for nonpayment of any monies owed the United States unless payment of such monies is more than 90 days in arrears.

H. Applicable Law: Delinquent fees and other charges shall be subject to all the rights and remedies afforded the United States pursuant to federal law and implementing regulations. (31 U.S.C. 3711 et seq.).

## VII. TRANSFER, SALE, AND RENTAL

A. Nontransferability: Except as provided in this section, this permit is not transferable.

B. Transferability Upon Death of the Holder:

1. If the holder of this permit is a married couple and one spouse dies, this permit will continue in force, without amendment or revision, in the name of the surviving spouse.

2. If the holder of this permit is an individual who dies during the term of this permit and there is no surviving spouse, an annual renewable permit will be issued, upon request, to the executor or administrator of the holder's estate. Upon settlement of the estate, a new permit incorporating current Forest Service policies and procedures will be issued for the remainder of the deceased holder's term to the properly designated heir(s) as shown by an order of a court, bill of sale, or other evidence to be the owner of the improvements.

C. Divestiture of Ownership: If the holder through voluntary sale, transfer, enforcement of contract, foreclosure, or other legal proceeding shall cease to be the owner of the physical improvements, this permit shall be terminated. If the person to whom title to said improvements is transferred is deemed by the authorizing officer to be qualified as a holder, then such person to whom title has been transferred will be granted a new permit. Such new permit will be for the remainder of the term of the original holder.

D. Notice to Prospective Purchasers: When considering a voluntary sale of the recreation residence, the holder shall provide a copy of this special use permit to the prospective purchaser before finalizing the sale. The holder cannot make binding representations to the purchasers as to whether the Forest Service will reauthorize the occupancy.

E. Rental: The holder may rent or sublet the use of improvements covered under this permit only with the express written permission of the authorized officer. In the event of an authorized rental or sublet, the holder shall continue to be responsible for compliance with all conditions of this permit by persons to whom such premises may be sublet.

FS-2700-5a (05/03)
OMB No. 0596-0082

## VIII. REVOCATION

A. Revocation for Cause: This permit may be revoked for cause by the authorized officer upon breach of any of the terms and conditions of this permit or applicable law. Prior to such revocation for cause, the holder shall be given notice and provided a reasonable time--not to exceed ninety (90) days--within which to correct the breach.

B. Revocation in the Public Interest During the Permit Term:

1. This permit may be revoked during its term at the discretion of the authorized officer for reasons in the public interest. (36 CFR 251.60(b)). In the event of such revocation in the public interest, the holder shall be given one hundred and eighty (180) days prior written notice to vacate the premises, provided that the authorized officer may prescribe a date for a shorter period in which to vacate ("prescribed vacancy date") if the public interest objective reasonably requires the lot in a shorter period of time.

2. The Forest Service and the holder agree that in the event of a revocation in the public interest, the holder shall be paid damages. Revocation in the public interest and payment of damages is subject to the availability of funds or appropriations.

a. Damages in the event of a public interest revocation shall be the lesser amount of either (1) the cost of relocation of the approved improvements to another lot which may be authorized for residential occupancy (but not including the costs of damages incidental to the relocation which are caused by the negligence of the holder or a third party), or (2) the replacement costs of the approved improvements as of the date of revocation. Replacement cost shall be determined by the Forest Service utilizing standard appraisal procedures giving full consideration to the improvement's condition, remaining economic life and location, and shall be the estimated cost to construct, at current prices, a building with utility equivalent to the building being appraised using modern materials and current standards, design and layout as of the date of revocation. If revocation in the public interest occurs after the holder has received notification that a new permit will not be issued following expiration of the current permit, then the amount of damages shall be adjusted as of the date of revocation by multiplying the replacement cost by a fraction which has as the numerator the number of full months remaining to the term of the permit prior to revocation (measured from the date of the notice of revocation) and as the denominator, the total number of months in the original term of the permit.

b. The amount of the damages determined in accordance with paragraph a. above shall be fixed by mutual agreement between the authorized officer and the holder and shall be accepted by the holder in full satisfaction of all claims against the United States under this clause: Provided, That if mutual agreement is not reached, the authorized officer shall determine the amount and if the holder is dissatisfied with the amount to be paid may appeal the determination in accordance with the Appeal Regulations (36 CFR 251, Subpart C) and the amount as determined on appeal shall be final and conclusive on the parties hereto: Provided further, That upon the payment to the holder of the amount fixed by the authorized officer, the right of the Forest Service to remove or require the removal of the improvements shall not be stayed pending final decision on appeal.

## IX. ISSUANCE OF A NEW PERMIT

A. Decisions to issue a new permit or convert the permitted area to an alternative public use upon termination of this permit require a determination of consistency with the Forest Land and Resource Management Plan (Forest plan).

1. Where continued use is consistent with the Forest plan, the authorized officer shall issue a new permit, in accordance with applicable requirements for environmental documentation.

2. If, as a result of an amendment or revision of the Forest Plan, the permitted area is within an area allocated to an alternative public use, the authorized officer shall conduct a site-specific project analysis to determine the range and intensity of the alternative public use.

FS-2700-5a (05/03)
OMB No. 0596-0082

a. If the project analysis results in a finding that the use of the lot for a recreation residence may continue, the holder shall be notified in writing, this permit shall be modified as necessary, and a new term permit shall be issued following expiration of the current permit.

b. If the project analysis results in a decision that the lot shall be converted to an alternative public use, the holder shall be notified in writing and given at least 10 years continued occupancy. The holder shall be given a copy of the project analysis, environmental documentation, and decision document.

c. A decision resulting from a project analysis shall be reviewed two years prior to permit expiration, when that decision and supporting environmental documentation is more than 5 years old. If this review indicates that the conditions resulting in the decision are unchanged, then the decision may be implemented. If this review indicates that conditions have changed, a new project analysis shall be made to determine the proper action.

B. In issuing a new permit, the authorized officer shall include terms, conditions, and special stipulations that reflect new requirements imposed by current Federal and State land use plans, laws, regulations, or other management decisions. (36 CFR 251.64).

C. If the 10-year continued occupancy given a holder who receives notification that a new permit will not be issued would extend beyond the expiration date of the current permit, a new term permit shall be issued for the remaining portion of the 10-year period.

## X. RIGHTS AND RESPONSIBILITIES UPON REVOCATION OR NOTIFICATION THAT A NEW PERMIT WILL NOT BE ISSUED FOLLOWING TERMINATION OF THIS PERMIT

A. Removal of Improvements Upon Revocation or Notification That A New Permit Will Not Be Issued Following Termination Of This Permit: At the end of the term of occupancy authorized by this permit, or upon abandonment, or revocation for cause, Act of God, catastrophic event, or in the public interest, the holder shall remove within a reasonable time all structures and improvements except those owned by the United States, and shall return the lot to a condition approved by the authorized officer unless otherwise agreed to in writing or in this permit. If the holder fails to remove all such structures or improvements within a reasonable period--not to exceed one hundred and eighty (180) days from the date the authorization of occupancy is ended--the improvements shall become the property of the United States, but in such event, the holder remains obligated and liable for the cost of their removal and the restoration of the lot.

B. In case of revocation or notification that a new permit will not be issued following termination of this permit, except if revocation is for cause, the authorized officer may offer an in-lieu lot to the permit holder for building or relocation of improvements. Such lots will be nonconflicting locations within the National Forest containing the residence being terminated or under notification that a new permit will not be issued or at nonconflicting locations in adjacent National Forests. Any in-lieu lot offered the holder must be accepted within 90 days of the offer or within 90 days of the final disposition of an appeal on the revocation or notification that a new permit will not be issued under the Secretary of Agriculture's administrative appeal regulations, whichever is later, or this opportunity will terminate.

## XI. MISCELLANEOUS PROVISIONS

A. This permit replaces a special use permit issued to: MARILYN HODGSON, PVL762301, on 12/12/1990.

B. The Forest Service reserves the right to enter upon the property to inspect for compliance with the terms of this permit. Reports on inspection for compliance will be furnished to the holder.

C. Issuance of this permit shall not be construed as an admission by the Government as to the title to any improvements. The Government disclaims any liability for the issuance of any permit in the event of disputed title.

D. If there is a conflict between the foregoing standard printed clauses and any special clauses added to the permit, the standard printed clauses shall control.

FOREST SERVICE
ELDORADO NATIONAL FOREST
SEC.IOTIIN·RI7E MDM

State Water Rights
7 mile Stone Tract
Surveyed by R.R.Bryan II 1886

Scale 1"=100'

Diversion No.1
Kuchman point of intake
2X6'X 2"Box.
Hall point of intake
Concrete Basin 8'dia 2'dp
Two Tanks 8'x 2'x 6'
Diversion No.2
Earth pond
Darroux point of intake
3'X5'X5'Box
Diversion No.3

N87°40'E 1990 approx to ¼ Cor Bet Sec Lo.11

N84°E 1285 approx to ¼ Cor Bet 2nd Lo.11

U.S. Hwy Fencing

N85°0' 1818 ¼ Cor to ¼ Cor Bet Sec 10.14

NW 1/4 SE-1/4 SEC IO

North

Kuchman line
Fall     90'    approx
Pipe length 840'  1½ to ¾ pipe
Hall line no filing of record..
Hall line    U.S. Filing
Fall     121' approx
Pipe length 816' 1½ to ¾"

Darroux line
Fall    10'
Pipe length 830' 1½ to ¾"

Note:- measurements and -
bearings are approximate.
measured flow in stream
Aug 1, 1939  43320 gal. per day
in season.

116        115        DARROUX
HALL     HAWLEY      KUCHMAN
                HIGHWAY
7 mile Stone Tract
LINCOLN

FS-2700-5a (05/03)
OMB No. 0596-0082

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection on information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0596-0082.

This information is needed by the Forest Service to evaluate requests to use National Forest System lands and manage those lands to protect natural resources, administer the use, and ensure public health and safety. This information is required to obtain or retain a benefit. The authority for that requirement is provided by the Organic Act of 1897 and the Federal Land Policy and Management Act of 1976, which authorize the Secretary of Agriculture to promulgate rules and regulations for authorizing and managing National Forest System lands. These statues, along with the Term Permit Act, National Forest Ski Permit Act, Granger-Thye Act, Mineral Leasing Act, Alaska Term Permit Act, Act of September 3, 1954, Wilderness Act, National Forest Roads and Trails Act, Act of November 16, 1973, Archeological Resources Protection Act, and Alaska National Interest Lands Conservation Act, authorize the Secretary of Agriculture to issue authorizations for the use and occupancy of National Forest System lands. The Secretary of Agriculture's regulations at 36 CFR Part 251, Subpart B, establish procedures for issuing those authorizations.

The Privacy Act of 1974 (5 U.S.C. 552a) and the Freedom of Information Act (5 U.S.C. 552) govern the confidentiality to be provided for information received by the Forest Service.

Public reporting burden for this collection of information, if requested, is estimated to average 1 hour per response for annual financial information; average 1 hour per response to prepare or update operation and/or maintenance plan; average 1 hour per response for inspection reports; and an average of 1 hour for each request that may include such things as reports, logs, facility and user information, sublease information, and other similar miscellaneous information requests. This includes the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

**EXHIBIT 3**





**EXHIBIT 4**



**EXHIBIT 5**



| United States<br>Department of<br>Agriculture | Forest<br>Service | Pacific Southwest Region<br>Eldorado National Forest | 100 Forni Road<br>Placerville, CA 95667<br>530-622-5061<br>TDD: 530-642-5122<br>Fax: 530-621-5297 |
|---|---|---|---|

**File Code:** 2720
Lot 116, 47 Milestone Tract

**Date:** July 6, 2023

Timothy Hodgson
PO Box 517
Courtland, CA 95615

Dear Timothy,

The Eldorado National Forest would like to thank you for your patience while awaiting the official rebuild determinations for the Recreation Residences destroyed in the Caldor Fire. Your cooperation throughout the disaster response has been invaluable to the progress being made on the forest. Additionally, we are immensely grateful to our collaborators, including the EPA for initiating the Phase I mitigation of hazardous material, FEMA for providing financial support for Phase II cleanup, and Cal OES for concluding the Phase II removal of lot debris. Following these essential steps, the United States Forest Service conducted hydrologic and geologic surveys to evaluate the rebuild suitability of each Recreation Residence lot. The following information includes your final Recreation Residence lot rebuild determination by the authorized officer, which is based on the results of those evaluations.

**Regretfully, your lot is not suitable for rebuilding a Recreation Residence.** Please see the excerpt from the Geologic and Flood Hazard Assessment below which informed this decision.

<u>Comments:</u> Two building sites located in wetland area between two perennial channels. Site is flooded from groundwater. See 116b. Located between two perennial channels (60' & 100').

<u>Recommendations:</u> Do not rebuild because of alluvial fan flood hazard. Additionally, cabin site is flooded and within wetland.

<u>Suitability:</u> Not suitable for a cabin site because in alluvial fan flood area.

As the established Special Use Permit Holder, you are able to choose from the options below.

---

**Option 1: Elect to participate in the In-Lieu Lot Lottery**
By January 31, 2024

- Inform your Special Use Permit Administrators that you will be requesting an in-lieu lot.

  *For more information, please review the In-Lieu Lot Lottery Information Sheet.*

---

**Option 2: Terminate your Special Use Permit**



**Caring for the Land and Serving People**

Printed on Recycled Paper





| United States | Forest | Eldorado National Forest | 4260 Eight Mile Road |
|---|---|---|---|
| Department of | Service | Placerville Ranger District | Camino, CA 95709 |
| Agriculture | | | (530) 647-5354 |

By January 31, 2024

- Inform your Special Use Permit Administrators that you will be requesting to terminate your permit.
- Terminating your Special Use Permit will:
  - Release you from the established permit holder duties and responsibilities as outlined in your Special Use Permit.
  - Forfeit your opportunity to rebuild a Recreation Residence on the Eldorado National Forest regardless of the results of the rebuild determinations.

The United States Forest Service appreciates your participation in the Recreation Residence Program. As a Special Use Permit Holder, you have the unique opportunity through the In-Lieu Lottery to continue the legacy of the historic cabin tracts in the Eldorado National Forest. Please contact your Special Use Permit Administrators via email (SM.FS.PVL-REC-RES@USDA.GOV) with any questions or concerns you may have.

Sincerely,

Joseph Stout
Forest Supervisor



**Caring for the Land and Serving People**          Printed on Recycled Paper